Thank you, your honor. May it please the court. My name is George Harris. I represent the petitioner, Shu-Yun Chu. And with the court's permission, I'd like to reserve two minutes for rebuttal. Just keep an eye on the clock there. It's running down. Your honors, the BIA erred as a matter of law in this case in finding that the petitioner had not met her burden of showing persecution and a well-founded fear of persecution because it mischaracterized the record and failed to consider the totality of the evidence. The BIA characterized this case as, you know, single arrest, not severely beaten. But if we look at the totality of the record, that record does indeed compel a finding of past persecution and a well-founded fear of future persecution. What it shows is a series of government retaliatory acts of persecution in response to Ms. Shu's organizing of workers. That sequence included being fired from her job, arrested, and then interrogated and physically beaten over a four-day period. Does it make any difference in the calculation that this was over ten years ago? Your honor, the record shows at the time of the hearing in this case that the police in China were still inquiring with Ms. Shu's family about her whereabouts, her return. I think the record also shows that what Ms. Shu engaged in here in China is not a matter of small consequence in that country. She was an organizer of a protest of over 200 workers in a country that has a history of taking that kind of thing very seriously. That is, public demonstrations on the one hand and organizing of workers on the other. So, yes, ten years has passed, but if anything, I mean, this may indeed add to her problems when she returns. In the eyes of the Chinese government, she was on bail. She was supposed to report on a weekly basis to local police and a monthly basis to the regional office. To return under these circumstances, I think, would put her under exactly the kind of suspicion and monitoring that would lead to further persecution. Mr. Harris, if she was viewed as an organizer, why was she not kept in custody as her other three co-workers were? Because, I'm sorry, Your Honor, because after four days of interrogation, being beaten on two days, being deprived of being kept in a small room and limited food, she confessed. And she signed a confession and she promised not to engage in organizing activity in the future. I understand the record, the other three are still in custody, is that correct? At the time of the hearing, the evidence was that those who led the protest were still in custody. Indeed, other co-workers have been imprisoned, sent to reformation camps. I think there is a well-founded basis to believe that Ms. Xu would be subject to similar treatment if she returned. Indeed, one co-worker warned her that if she returned, this could be the case. Was that 2001, the hearing? Was it 2001? That the warning occurred? The hearing. That the hearing occurred, yes, Your Honor. That's the initial hearing with the immigration judge occurred in 2001, that's correct. But I think the delay in this case has been found to be no fault of Ms. Xu's, but rather ineffective assistance of counsel led the BIA to open the case here. So we do have this series of things that happens. First, in August of 1999, or rather in May of 1999, co-workers are severely beaten. In August, the protest is organized. It takes the police six hours to disperse this protest, and this leads to a month later being summoned to the director's office, four uniformed police officers being taken to the police station, arrested, the four days that follow. The BIA focused on her admission on cross-examination, that this wasn't severe, that she didn't suffer severe injuries. But the record shows she's beaten on the back with a baton for three or five minutes on two different days. She's pushed to the ground, kicked in the chest, knocked down, experiences a sense of suffocation, bruising to the back and chest, which requires medical treatment the day she leaves custody, and again when she arrives in the States a few months later. Her case falls sort of somewhere in between, within a range of four Ninth Circuit cases, right? We've got sort of two on each end where there were arrests and beatings, and which two are you... Well, Your Honor, I think that it really compares quite closely with both the Guo case and the Mihaljev case. In the Guo case, what the court found is that each of the two detentions compel the finding of persecution based on totality of the circumstances. So if we look at the first detention in that case, detained for a day and a half, here Ms. Hsu was detained for four days, coerced into signing an agreement that the petitioner would no longer believe in Christianity, here in a similar confession by Ms. Hsu. A similar physical harm in Guo, struck two times in the face, ordered to do push-ups until no longer could stand, kicked in the stomach while he lay on the floor. Here, again, twice beaten, kicked in the chest, knocked down, unable to stand for several minutes. Again, in the Mihaljev case, the court specifically found didn't suffer significant injury as a result of beatings, which in that case was with a sandbag, didn't require medical attention. So I think those cases are really very similar, whereas... Are you persecuted if you decide to have a labor demonstration and the particular country simply doesn't allow labor demonstrations,  is that persecution? For example, was Gompers persecuted in this country? Maybe so. Well, that question is not before the Court, but Your Honor... But the point is, is if a country simply doesn't have, let's say for the sake of the argument, labor demonstrations, and that's really all she's doing is a labor demonstration, not even for wages or such. She just says she wants some other person to get paid some money, right? Right. Payment of back wages on behalf of... Your Honor, judicial process is not persecution. Being taken to a police station and beaten until one confesses for four days is persecution. Monitoring, you know, on a weekly basis, monthly basis, even though there's been no conviction of anything, that's persecution, telling, going... How is that different, though, from putting somebody in the United States on conditions of release? I mean, we require people to report to probation officers or court law enforcement officers all the time to make sure that they're complying with the law while proceedings are pending, don't we? Yes, Your Honor, but we don't put people in reformation camps and hard labor if they don't agree not to be... I have a question. You're arguing that merely requiring her to report to the police station on a weekly basis is persecution. Well, I think the persecution at the time is established by what happened at the police station as well as what happened afterwards and the threats to her family and the retaliation to the family that occurred immediately afterwards and since she has been gone. However, the fear of future persecution, I think, is also based on what has happened to those who have remained and presumably have not complied with the demands of the government to not engage in this kind of activity. We don't know that. There's no evidence to that effect. There is no evidence in this record to the effect of why those people are in camps. There is none. We know that they are still in camps. We know they're in camps. We have no idea why they're there. Maybe one of them hauled off and slugged one of the police officers. I don't know. You don't know. The evidence doesn't show. That's true, Your Honor, but we have at least the fact that each of them seems to have suffered that fate. And here, I mean, I think the case has recognized the difficulty of a person in Ms. Hsu's position of coming forward with that kind of definitive evidence. And I think the facts of the statements to her family, the continued inquiries. Sure. She's supposed to be on bail, and she skipped. Well, of course they're going to inquire. Why wouldn't they inquire? You know, the question really isn't the difficulty. The question isn't whether she has a stupid case. That's not the point. The question is whether we're compelled, whether the BIA was compelled to find that she was persecuted. That's really the question. Yes, Your Honor. And I think if we compare this case to the Guo case and to the Mihalov case in which this Court found that that finding was compelled, the same result is necessary here. I see that my time is up. Your time is up, counsel. Thank you. Thank you. All right. We'll hear from Ms. Murcia on behalf of the United States. Good morning. May it please the Court, lease us mercy of the Office of Immigration Litigation for the respondent. The main issue before the Court today is whether a reasonable fact finder would be compelled to find that the petitioner carried her burden of establishing past persecution with the mistreatment that the petitioner alleged she underwent in China simply consisted of a single four-day incarceration during which she was subject to two beatings of short duration for which she expressly acknowledged that the injuries she sustained were not particularly severe. Under INA 242b4b, an administrative determination that an applicant has failed to carry her burden of establishing asylum, withholding, or eligibility for protection under the Convention of Torture, may be judicially reversed only if his or her evidence was so compelling that no reasonable fact finder could fail to find that eligibility was established. Here, as Your Honors pointed out, the petitioner's case falls in between four cases in the Ninth Circuit, two of them of which the petitioner is relying on, the Halib v. Ashcroft and Globish v. Ashcroft, and two that the respondent believes more closely resembles the Faxon's case, Prasad v. Dainath and Mendez-Efriam. Was it Prasad or Gu? I thought the fourth one on my list is Gu versus Gonzalez. We relied specifically on Prasad and Mendez-Efriam, but as Your Honor points out, the facts of Gu are actually quite similar to this case, even though the respondent did not cite it in their replacement brief. In Glo, very similar to this case, there was an interrogation of short duration. The petitioner in that particular case was detained for approximately three days. They were beaten with a rod that left red marks, but there was no extensive medical treatment, and the interrogation did not, even though there were inquiries by the Chinese police afterwards, the court did not find that there was a well-founded fear. The facts in this case are extraordinarily similar. There was a brief detention of approximately four days. There were two short beatings over the duration of four days, and the petitioner was released. And while the police continued to inquire as to her whereabouts, she was in China for approximately two months after she was released from prison, and she was not harmed during that time period. I'm sorry. I just asked you to distinguish the Guo case, the G-U-O case, where there was a day and a half detention was sufficient. In that particular case, as actually Guo, G-U, points out, first of all, the suffering that was underwent by the petitioner in that case was quite more extensive. Not only was he, even though the detention lasted a day and a half, he was beaten, he was kicked in the stomach several times, he was forced to do push-ups until he couldn't do it, he couldn't hold himself up anymore, and I believe he was also struck in the face several times then. The beating in that particular incident was quite more severe. But not only that, even though the petitioner does say that there seem to be two different findings in that case, Guo specifically states that they're looking at the totality of the circumstances, that they're not, even though he finds that, even though in Guo they do make indications that they're finding persecution on both detentions. I mean, certainly they say in the beginning that they're looking at the totality of the circumstances. So they're looking at both. If that's the test, Ms. Murcia, as I understand Mr. Harris's argument, the totality of the circumstances here would include the fact that she was working at a state-owned factory, she was one of the ringleaders of a labor protest, she was arrested as a result of the factory manager calling in the police, then the conduct with the police occurred, then she lost her job and her husband lost his job for some period of time. Aren't those all factors that we have to take into consideration in the persecution quotient? Well, first of all, Your Honor, the government would state that there was no, the petitioner never brought up economic persecution as an allegation here. And second of all, there was no allegation that she couldn't support herself during that time. She testified after that she lost her job that she was able to rely on her savings, and her husband was working for the two years from 1999 until 2001, and he never alleged that he lost his job on account of her actions. He simply, or the way that I believe she testified that he lost his job was simply because his company had a bad reputation, and I believe as well in his affidavit he simply says that the company was in bad times. There's no connection between her husband losing his job and her prior actions. He was suspended for two weeks, but there was no allegation that that economically impacted them during that time. The crucial difference between the cases that the petitioner cites and the cases that the respondent cites, as we argued in our replacement brief, is again whether the asylum applicant was able to demonstrate that the evidence compelled the conclusion that the board decision was incorrect. In Gros, as Your Honor pointed out, the petitioner was able to show repeated lengthy and severe harassment. In contrast, the board's findings in Prasad and in this particular case is supported by substantial evidence because they're not able to show that this comports with the extreme concept of persecution that this court has stated that persecution consists of. If Your Honors don't have any more questions, I would be glad to sum up. I don't see any more. Okay. Therefore, the record evidence would not compel the conclusion that the petitioner met her burden when she could not establish that the mistreatment in China rose to the level of persecution or that she had a well-founded fear of future persecution or a clear probability of future persecution and torture. As such, the respondent respectfully requests that the court deny the petition for review. Thank you. Thank you. Counsel, I'll give you a minute in rebuttal, even though you... I can be very brief. I think if the court just looks at the four cases that have been identified, it's clear which side of the line this case falls on. The Prasad case that Counsel mentioned, single four- to six-hour detention. The Mendez-Efren case, also a four-day detention. As you hear, no beating, no harm, not even threats that were made at that time. So I think the Guo case is very much on point with the facts here. And so I think following the precedent of this court, there is a compelling basis to find that there was persecution here and, therefore, to reverse the BIA. Indeed, I would say that there was a clear probability that an applicant would be persecuted or deported to her home country, and for that reason, this court should also find the court errant in failing to find withholding of removal. All right. Thank you. Thank you. Your case just argued is submitted. The next three cases on the calendar are also submitted.
judges: Hogan, Fernandez, Tallman